### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DARRYL SMITH, | ) | CASE NO. 1:24-cv-505 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| ANNETTE CHAMBERS-SMITH, *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

Before the Court are four motions to dismiss filed by Defendants. (ECF Nos. 14, 23, 31, 32). Plaintiff has timely opposed each of these motions to dismiss. (ECF Nos. 15, 16, 33). For the reasons discussed below, the pending motions to dismiss are **GRANTED IN PART AND DENIED IN PART**.

## I. PROCEDURAL BACKGROUND

On May 17, 2024, Plaintiff Darryl Smith, a state prisoner confined at Mansfield Correctional Institution ("ManCI"), filed an amended complaint against Anette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"), and nine other ODRC employees connected to ManCI: (i) Timothy McConahay, Warden at ManCI; (ii) James Kennard, a unit manager at ManCI; (iii) Lisa Booth, an institutional inspector assigned to ManCI; (iv) David Robinson, an administrative assistant to Warden McConahay; (v) Dana Blankenship, an institutional inspector assigned to ManCI; (vi) Matthew Sheppard, a correctional officer at ManCI; (vii) Mathew Murin, a correctional officer at ManCI; (viii) Shelli Branch, Chief of Classification at ManCI; and (ix) Christopher Lambert, Chief Institutional Inspector at ManCI. (ECF No. 6, PageID #72–76). The amended complaint alleges that Plaintiff was placed in general population when he was transferred to ManCI from Trumbull Correctional Institute ("TCI"), even

though he had been granted a protective control/protective custody status while at TCI, and he was assaulted by ManCI inmates on March 18, 2022, and September 1, 2023.  (*Id.* at PageID #76–83).  It also alleges that prison officials ignored warnings by Plaintiff of threats to his safety, correctional officers failed/refused to intervene when Plaintiff was assaulted, Plaintiff did not receive proper medical treatment for his injuries, there was no proper investigation of the assaults, and prison officials retaliated against Plaintiff for filing grievances.  (*Id.* at PageID #77–83).

The amended complaint asserted fifteen claims for relief:[1] (i) Violation of the Eighth Amendment Cruel & Unusual Punishment Duty to Protect, against Defendants McConahay, Robinson, Branch, and Chambers-Smith (Count 1); (ii) Violation of the Eighth Amendment Cruel & Unusual Punishment Duty to Protect, against Defendant Kennard (Count 2); (iii) Violation of the Eighth Amendment Duty to Protect, against Defendants McConahay, Branch, Chambers-Smith, and Booth (Count 3); (iv) Violation of the Eighth Amendment Duty to Protect, against Defendant Murin (Count 4); (v) Violation of the Eighth Amendment Cruel & Unusual Punishment, against Defendants McConahay, Robinson and Blankenship (Count 4B); (vi) Violation of the First Amendment Absolute Right to File Valid Grievances, against Defendants Booth, Lambert, McConahay, and Chambers-Smith (Count 5); (vii) Violation of the First Amendment Seizure of Legal Materials/Retaliation, against Defendants Booth, Robinson, Lambert, McConahay, and Chambers-Smith (Count 6); (viii) Violation of the First Amendment Retaliation, against Defendants Booth and Lambert (Count 7); (ix) Spoliation (Count 8); (x) Violation of the Eighth Amendment Duty to Protect, against Defendants McConahay, Robinson, Kennard, Booth, and Chambers-Smith (Count 9); (xi) Violation of Eighth Amendment Failure to Provide Adequate Medical Care (Count 10); (xii) Violation of Eighth Amendment Failure to Provide Adequate

---

[1] The amended complaint mistakenly labels two claims as Count Four and two claims as Count Thirteen.  (ECF Doc. 6, PageID #86, 90).  To avoid confusion, the Court will label the duplicate counts as Count 4B and Count 13B.

Medical Care, against Chambers-Smith, McConahay, Robinson, Blankenship and Lambert (Count  11); (xiii) Violation of the First Amendment Absolute Right to File Valid Grievances, against Defendants Blankenship, Lambert, McConahay, and Chambers-Smith (Count  12); (xiv)  Violation of the First Amendment Retaliation, against Defendants Blankenship, Lambert, McConahay, and Chambers-Smith (Count 13); and (xv) Spoliation, against Defendants Sheppard, Blankenship, Robinson, Lambert, McConahay, and Chambers-Smith  (Count 13B).  (*Id.* at PageID #83–90).

On June 7, 2024, Defendants Chambers-Smith, Kennard, Booth, Blankenship, Sheppard, and Murin (collectively, "Initial Defendants") filed a motion to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6) ("Initial Motion to Dismiss").  (ECF No. 14).  On July 8, 2024, Plaintiff responded in opposition ("Initial Response").  (ECF No. 15).  Initial Defendants replied in support of the motion to dismiss on July 22, 2024.  (ECF No. 16).

On September 10, 2024, Defendants Branch and Lambert (collectively, "Subsequent Defendants") moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6) ("Subsequent Motion to Dismiss").  (ECF No. 23).  On October 10, 2024, Plaintiff responded to the Subsequent Motion to Dismiss ("Subsequent Response").  (ECF No. 26).

On October 23, 2024, Defendant Robinson moved to dismiss the claims against him under Fed. R. Civ. P. 12(b)(6) ("Robinson Motion to Dismiss").  (ECF No. 31).  The next day, Defendant McConahay also moved to dismiss the claims against him under Fed. R. Civ. P. 12(b)(6) ("McConahay Motion to Dismiss").  (ECF No. 32).  Plaintiff filed a combined response to Robinson's and McConahay's motions to dismiss on November 22, 2024.  (ECF No. 33).

## II.     FACTUAL BACKGROUND[2]

### A.      Plaintiff's Arrival at ManCI

Plaintiff was previously incarcerated at TCI where he was granted protective control/protective custody after being assaulted by other inmates. (ECF No. 6, ¶ 19). The Warden at TCI found that Plaintiff's pre-incarceration status as an informant for the FBI and Cleveland Police Department warranted granting him protective control status. (*Id*. ¶ 20). Upon Plaintiff's transfer to ManCI, the Warden at TCI relayed the protective custody request to Defendants Chambers-Smith and Branch. (*Id*. ¶ 22). Upon arrival at ManCI, Plaintiff was placed in general population. (*Id.* ¶ 24).

### B.      The March 18, 2022, Assault

In March 2022, Plaintiff sent multiple internal emails ("kites") to ManCI staff, including Defendants Kennard, Chambers-Smith, Booth, and McConahay, requesting a meeting to discuss his safety concerns about his cellmate's behavior. (*Id.* ¶¶ 26–34). Plaintiff's concerns included information that his cellmate had a weapon in the cell and there was a direct threat from his cellmate that he would stab Plaintiff if he did not move to another cell. (*Id*. ¶¶ 31, 34). Plaintiff spoke face to face with Defendant Kennard on the morning of March 18, 2022, reiterating his safety concerns about his cellmate. (*Id*. ¶ 36). Plaintiff was stabbed several times by his cellmate between 10:30 p.m. and 11:00 p.m. on March 18, 2022 ("March 18th Assault"). (*Id*. ¶ 39).

After being taken to the infirmary, Plaintiff was disciplined for fighting by being placed in "the hole" (segregated housing) for 11 days and he was issued a disciplinary ticket. (*Id*. ¶¶ 43–48). Plaintiff was later found not guilty of the charges in the disciplinary ticket. (*Id*. ¶49). Plaintiff's

---

[2] The factual allegations that follow are contained within Plaintiff's amended complaint. (ECF No. 6). The Court must accept all plausible allegations as true because, at this stage of the proceeding, the Court must construe the allegations in a light most favorable to Plaintiff (non-movant). *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

cellmate only received a disciplinary ticket for fighting and possessing a knife, with no charges for the stabbing. (*Id.* ¶¶ 50–51). There was no police report resulting from the March 18th Assault as required by Ohio Rev. Code § 2921.22. (*Id.* ¶ 55). On April 1, 2022, Plaintiff filed a grievance and informed Defendant McConahay about the conversations he previously had with Defendants Kennard and Booth regarding his safety concerns. (*Id.* ¶ 57). Plaintiff filed another grievance reporting Defendant Booth's threatening language, but Defendant Lambert dismissed the grievance after finding nothing inappropriate with Defendant Booth's language. (*Id.* ¶¶ 61–62).

On April 13, 2022, Defendant Booth ordered Plaintiff to sign a consent form for the destruction of materials seized from Plaintiff's prison cell the night of the March 18th Assault, which included legal documents, court files (several related to a pending habeas petition before the Supreme Court), and legal books. (*Id.* ¶¶ 63–64). Following Plaintiff's refusal to consent: (i) he was issued a disciplinary ticket for possessing contraband and threatening a lawsuit; (ii) Defendant Booth "produced a fake declaration under oath"; and (iii) Plaintiff was found guilty of possessing contraband. (*Id.* ¶¶ 65–67). Defendant Robinson ordered the seized materials destroyed and Defendants Booth and Lambert banned Plaintiff from filing any grievances for 90 days. (*Id.* ¶¶ 67–68).

### C.    The September 1, 2023, Assault

On September 1, 2023, Plaintiff was leaving the food line when his name was called and, upon turning around, another inmate punched him in the head ("September 1st Assault"). (*Id.* ¶ 70). Plaintiff was taken to the infirmary but was not checked for any concussion symptoms or other injuries. (*Id.* ¶ 75). Plaintiff experienced some balancing issues, headaches, and dizziness after the attack but was never seen by a licensed physician. (*Id.* ¶¶ 76–77). Plaintiff filed grievances to Defendants Blankenship and Lambert for the assault itself and for no report being

made to law enforcement after the assault.  (*Id*. ¶ 79).  After Plaintiff filed his grievances, Defendants Blankenship and Lambert placed Plaintiff on another 90-day ban against filing any grievances.  (*Id*. ¶ 80).  On September 26, 2023, Plaintiff sent a direct complaint to Defendant Chambers-Smith informing her of the September 1st Assault, the 90-day ban on filing grievances, and the lack of medical attention after the assault.  (*Id*. ¶ 87).  Defendant Chambers-Smith did not respond to Plaintiff's complaint.  (*Id*. ¶ 88).

## III.    STANDARD OF REVIEW

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Rule 8(a)(2) provides that the complaint should contain a short and plain statement of the claim, but that it should be more than a "the-defendant-unlawfully-harmed-me" accusation.  *Id.* at 677–78 (citing *Twombly*, 550 U.S. at 555).  A plaintiff must provide sufficient grounds to show entitlement to relief; "labels, conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).  Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true."  *Id.*  When reviewing a complaint, a court must construe the

pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

When deciding a motion to dismiss under Rule 12(b)(6) or Rule 12(c), generally, the Court cannot consider matters outside the pleadings, unless the motion is converted to a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).  Still, the Court may consider exhibits attached to or otherwise incorporated in the complaint without converting a Rule 12(b) motion to dismiss into a motion for summary judgment.  Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## IV.    DISCUSSION

The ten defendants have filed a combined four motions to dismiss: the Initial Motion to Dismiss (ECF No. 14); Subsequent Motion to Dismiss (ECF No. 23); Robinson Motion to Dismiss (ECF No. 31); and McConahay Motion to Dismiss (ECF No. 32).  The Subsequent Motion to Dismiss, Robinson Motion to Dismiss, and McConahay Motion to Dismiss each adopt, incorporate, and assert all the arguments set forth in the Initial Motion to Dismiss.  (ECF No. 23, PageID #161 n.1, 162, 165; ECF No. 31, PageID #193 n.1, 195–97; ECF No. 32, PageID #203 n.1, 205, 207).  Therefore, the Court will jointly address these shared arguments for dismissal under the Initial Motion to Dismiss before moving on to the defendant-specific arguments raised in the remaining motions to dismiss.

### A.    Initial Motion to Dismiss

#### 1.    *Leaman*[3] *Doctrine and Waiver*

Defendants argue that Plaintiff's claims are barred by the *Leaman* doctrine because he previously filed claims against the ODRC stemming from the March 18th Assault and September

---

[3] *Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 825 F.2d 946 (6th Cir. 1987).

1st Assault in state court.  (ECF No. 14, PageID #115).  They argue that the Court should summarily dismiss this action as a result.  (*Id.* at PageID #120).

On October 17, 2023, Plaintiff filed a *pro se* complaint against the ODRC in the Ohio Court of Claims (Case No. 2023-00668).[4]  Complaint, *Smith v. Ohio Dep't of Rehab. & Corr.*, No. 2023-00668JD (Ohio Ct. Cl. Oct. 17, 2023).  Plaintiff used a standardized "Claim Form" provided by the Court of Claims to describe the details of the September 1st Assault.  *Id*.  In the complaint, Plaintiff claimed that: (i) prison officials did not issue a disciplinary ticket to the assailant; (ii) prison officials failed to report the assault to law enforcement and destroyed evidence of the assault; (iii) he did not receive adequate medical care after the assault; and (iv) ManCI's policies and officials allow inmates to assault each other without consequences.  *Id*. at 1–3.  Plaintiff attached an affidavit to the complaint describing the events during and after the assault.  *Id*. at 5–6.  On June 13, 2024, Plaintiff voluntarily dismissed the claims, closing the case.  Notice of Voluntary Dismissal, *Smith v. Ohio Dep't of Rehab. & Corr.*, No. 2023-00668JD (Ohio Ct. Cl. June 13, 2024).

On March 19, 2024, Plaintiff filed another *pro se* complaint against the ODRC in the Ohio Court of Claims (Case No. 2024-00272).  Complaint, *Smith v. Ohio Dep't of Rehab & Corr.*, No. 2024-00272JD (Ohio Ct. Cl. Mar. 19, 2024).  Plaintiff again used the standardized complaint form to describe the details of the March 18th Assault.  *Id*.  In the complaint, Plaintiff claims: (i) prison officials falsified disciplinary tickets relating to the assault; (ii) prison officials intentionally refused to report the assault to law enforcement; (iii) spoliation of evidence; and (iv) that ManCI's policies encourage drug use and inmates to assault each other.  Plaintiff attached a witness list to

---

[4] Under Federal Rule of Evidence 201, the Court takes judicial notice of Plaintiff's Ohio Court of Claims cases.  (Case Nos. 2023-00668 and 2024-00272).  "Federal courts may take judicial note of proceedings in other courts of record." *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969).

the complaint. *Id.* at 3–7. According to the case docket, this case remains pending before the Ohio Court of Claims.

Under Ohio Rev. Code § 2743.02(A)(1), "filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee, as defined in section 109.36 of the Revised Code." The statute creates a "quid pro quo, in which the state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees." *Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir. 1995). To decide whether the *Leaman* doctrine applies, district courts must determine whether there was a "knowing, intelligent, and voluntary" waiver. *See Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 956 (6th Cir. 1987); *Harris v. Sowers*, No. 22-4060, 2024 U.S. App. LEXIS 2772, at *15 (6th Cir. Feb. 6, 2024) ("A waiver under section 2743.02(A)(1) must be knowing, intelligent, and voluntary.").

When a plaintiff is represented by counsel before the Ohio Court of Claims, there is a presumption that a knowing, intelligent, and voluntary waiver has been made. *Leaman*, 825 F.2d at 957–58; *Kaifasz v. Haviland*, 55 F. App'x 719, 721 (6th Cir. 2003). That said, if the complaint was filed *pro se*, like Plaintiff's, then this presumption no longer applies. *Kaifasz*, 55 F. App'x at 722. Instead, the Court "must make a factual determination based upon the record that a *pro se* plaintiff knowingly, intelligently, and voluntarily waived his § 1983 claim in federal court when he filed suit in the Ohio Court of Claims." *Khatri v. Ohio State Univ.*, No. 5:18-cv-2962, 2020 U.S. Dist. LEXIS 16965, at *14 (N.D. Ohio Jan. 17, 2020) (citing *Kaifasz*, 55 F. App'x at 722).

To determine whether Plaintiff knowingly, intelligently, and voluntarily waived his claims, the Court may consider a "*pro se* plaintiff's prior litigation experience, the coherency of his filings in both the federal and Court of Claims matters, and whether the litigant referenced the statutory

9

waiver provision in the filings." *Troche v. Crabtree*, 2014 U.S. Dist. LEXIS 72626, at *9 (S.D. Ohio May 28, 2014). Defendants argue that Plaintiff is a "prolific and sophisticated *pro se* litigant" because of his extensive prior litigation history, citing his twelve *pro se* lawsuits—including seven actions in the Court of Claims. (ECF No. 14, PageID #118–20). Defendants also argue that because Plaintiff only named the ODRC as the defendant in his previous Court of Claims cases, rather than the individual defendants, it suggests Plaintiff has a familiarity with the waiver statute. (*Id*. at PageID #118 (citing *Stone v. Ohio Parole Bd.*, 2023 U.S. Dist. LEXIS 5690, at *6–8 (S.D. Ohio Jan. 11, 2023)). Plaintiff argues that he was not familiar with the waiver statute because, in each of his previous filings, he "used a standardized form provided by the Court." (ECF No. 15, PageID #130). Plaintiff contends that he only brought claims against ODRC in his previous filings because the form only asks for the name of the specific state entity against whom the claim is asserted. (*Id*. at PageID #131).

Defendants argue the Court should also find Plaintiff knowingly, intelligently, and voluntarily waived his right to pursue his claims in federal court because his *pro se* Court of Claims filings are "properly captioned, organized into concise, clear paragraphs . . . [and] broken down into specific counts." (ECF No. 16, PageID #142). While Plaintiff's Court of Claims filings contain headings and are organized in a paragraph format, the Court finds this evidence insufficient to establish that Plaintiff is a sophisticated, experienced *pro se* litigant. As discussed above, Plaintiff used a standardized form to fill in details surrounding his claims, and no evidence suggests how he wrote the complaints reflects a greater sophistication and knowledge than any typical *pro se* litigant. Additionally, while Plaintiff thoroughly explains the details surrounding his various claims in the relevant Court of Claims filings, he does not cite to any statutes or caselaw.

Defendants argue that Plaintiff's reference to an attorney in the complaint for Case No. 2023-00668 shows that Plaintiff had access to an attorney when filing the case and the "decision to not utilize counsel indicates he was capable of competently representing himself." (*Id*. at PageID #117–18). Page 3 of that complaint has a notation at the bottom next to the signature block stating: "cc: Attorney Larry Shenise."  Complaint at 3, *Smith v. Ohio Dep't of Rehab. & Corr.*, No. 2023-00668JD (Ohio Ct. Cl. Oct. 17, 2023).  Plaintiff maintains that it is undisputed that he was a *pro se* litigant in the Court of Claims filings.  (ECF No. 15, PageID #129).  While Plaintiff has retained an attorney for the instant case, the Court does not find that Defendant established Plaintiff received any advice or aid from counsel in preparing his various filings for his Court of Claims cases or in litigating those matters.  There is therefore no presumption of waiver based on Plaintiff's purported access to an attorney.

In a recent decision, the Sixth Circuit emphasized that a defendant's failure to offer "convincing evidence" that a plaintiff was "familiar with the waiver provision of the Ohio Court of Claims Act" undermines a defendant's argument for waiver under the *Leaman* doctrine.  *Harris v. Sowers*, 2024 U.S. App. LEXIS 2772, at *16.  The Sixth Circuit emphasized that the plaintiff in *Harris* also "never mentioned the waiver provision in any of his filings in the Court of Claims" as evidence that he did not make a knowing, voluntary, or intelligent waiver.  *Id*.  Adopting the approach set forth under *Harris*, the Court finds that Plaintiff did not make a knowing, voluntary, or intelligent waiver.  In the relevant cases before the Ohio Court of Claims, Plaintiff did not mention the waiver provision in any of his filings, the complaints are coherent and organized but do not suggest that Plaintiff is a sophisticated *pro se* litigant, and the reference to an attorney does not establish that Plaintiff received advice from counsel in relation to his filings.  Defendants do not offer convincing evidence that Plaintiff was familiar with the waiver provision.  Accordingly,

11

Defendants' request to dismiss all claims under the *Leaman* doctrine is **DENIED WITHOUT PREJUDICE**.[5]

### 2. *Eleventh Amendment Immunity*

Defendants argue that Plaintiff's claims against them for actions performed in their official capacities are barred under the Eleventh Amendment. (ECF No. 14, PageID #120–21). Plaintiff does not offer an opposing argument in his Initial Response. In his Subsequent Response, Plaintiff concedes that the claims against Defendants in their official capacities should be dismissed. (ECF No. 26, PageID #174). "Where a party fails to respond to an argument in a motion to dismiss, 'the Court assumes he concedes this point and abandons the claim.'" *USA Parking Sys., LLC v. E. Gateway Cmty. Coll.*, No. 4:20-cv-1967, 2022 U.S. Dist. LEXIS 18320, at *24 (N.D. Ohio Feb 1, 2022) (quoting *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021)). Thus, Plaintiff has abandoned his claims against Defendants in their official capacities.

Even if Plaintiff had not abandoned the official capacity claims, they would still be barred on the merits. The Eleventh Amendment grants sovereign immunity to the states, guaranteeing that "nonconsenting States may not be sued by private individuals in federal court." *Guertin v. Michigan,* 912 F.3d 907, 936 (6th Cir. 2019). Under the Eleventh Amendment, the State of Ohio and its agencies are immune from suit "unless the State's immunity has been abrogated by Congress or the State of Ohio has consented to be sued." *Hall v. Brazie*, 2023 U.S. Dist. LEXIS 50997, at *4 (N.D. Ohio Mar. 24, 2023). Eleventh Amendment immunity extends to state officials sued in their official capacity because "a suit against a state official in his or her official capacity . . . is a suit against the official's office." *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). It is undisputed that, at all relevant times, Defendants were employed by ManCI

---

[5] After discovery, Defendants may raise this argument at the summary judgment phase if new evidence is found that establishes Plaintiff made a knowing, voluntary, and intelligent waiver.

and are therefore considered state officials.  Thus, Plaintiff's claims against Defendants in their official capacities are barred by Eleventh Amendment immunity and all claims against Defendants in their official capacities are **DISMISSED WITH PREJUDICE**.

### 3.    *Failure to State a Claim – Count 4B*

In Count 4B, Plaintiff asserts that Defendants McConahay, Robinson, and Blankenship violated the Eighth Amendment's protections against cruel and unusual punishment because they ratified the placement of Plaintiff "in the hole" for 11 days after he had been the victim of a brutal attack and without receiving proper medical care.  (ECF No. 6, PageID #86–87).  Defendants argue that Count 4B should be dismissed because a prisoner's placement in segregation housing, even if unpleasant and considered unfair by Plaintiff, does not trigger constitutional protections under the Eighth Amendment.[6]  (ECF No. 14, PageID #122).  Plaintiff fails to oppose these arguments for dismissal in the motions to dismiss.  Instead, Plaintiff contends that Count 4B should be allowed to proceed as a First Amendment retaliation claim, even though it was explicitly pled as an Eighth Amendment claim.  (ECF No. 15, PageID #134–35).  The Court finds that Plaintiff is attempting to amend the complaint to relabel Count 4B as a First Amendment claim.  But "a complaint cannot be amended by briefs in opposition to a motion to dismiss." *GE v. S&S Sales Co.*, 2012 U.S. Dist. LEXIS 98771, at *10 (N.D. Ohio July 17, 2012) (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y 1989)).  The Court therefore declines to construe and label Count 4B as a First Amendment claim.

Since Plaintiff fails to respond to Defendants' arguments that the cruel and unusual punishment claim under Count 4B should be dismissed, he has abandoned this claim.  *See USA Parking Sys., LLC,* 2022 U.S. Dist. LEXIS 18320, at *24; *see also Humphrey v. U.S. Att'y Gen.'s*

---

[6] Defendants Robinson and McConahay adopted or asserted this argument in their motions to dismiss.  (*See* ECF No. 31, PageID #193 n.1, 199; ECF No. 32, PageID #203 n.1).

*Off.*, 279 F. App'x 328, 331 (6th Cir. 2008); *Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007); *Weatherby v. Fed. Express*, 454 F. App'x 480, 490 (6th Cir. 2012) (noting that a "plaintiff must . . . make some effort at argumentation or presentation of facts" and absent such effort, plaintiff's claims are deemed waived).  Thus, Count 4B is **DISMISSED**.

### 4.  *Failure to State a Claim – Counts 8 and 13B*

Defendants move to dismiss Counts 8 and 13B, which both assert a spoliation of evidence claim, for failure to state a claim upon which relief can be granted.[7]  (ECF No. 14, PageID #122–23).  "While federal law does indeed govern sanctions as they pertain to trial and discovery after *Adkins*, there is no independent federal cause of action, or "substantive law," for spoliation of evidence" *Cummerlander v. Patriot Preparatory Acad. Inc.*, 86 F. Supp. 3d 808, 828 (S.D. Ohio 2015).  Plaintiff concedes that Counts 8 and 13B should be dismissed at this stage.  (ECF No. 15, PageID #127; ECF No. 26, PageID #174; ECF No. 33, PageID #213).  The Court finds that Plaintiff has abandoned these claims.  Thus, Count 8 and Count 13B are **DISMISSED**.

### 5.  *Failure to State a Claim – Counts 5, 7, 12, and 13*

Defendants argue that Counts 5, 7, 12, and 13 should be dismissed because the grievance restriction placed on Plaintiff did not violate the First Amendment.[8]  (ECF No. 14, PageID #124).  In Counts 5 and 12, Plaintiff asserts that Defendants Chambers-Smith, McConahay, Blankenship, and Lambert violated Plaintiff's absolute right to file valid grievances under the First Amendment by instituting a 90-day ban on the filing of all grievances.  (ECF No. 6, PageID #87, 89).  In Counts 7 and 13, Plaintiff asserts that Defendants Chambers-Smith, McConahay, Blankenship, and

---

[7] Subsequent Defendants, Defendant Robinson, and Defendant McConahay each adopted or asserted this argument in their motions to dismiss.  (*See* ECF No. 23, PageID #161 n.1, 167; ECF No. 31, PageID #193 n.1, 201; ECF No. 32, PageID #203 n.1).

[8] Subsequent Defendants, Defendant Robinson, and Defendant McConahay adopted or asserted this argument in their motions to dismiss.  (*See* ECF No. 23, PageID #161 n.1, 166–67; ECF No. 31, PageID #193 n.1; ECF No. 32, PageID #203 n.1).

Lambert also violated the First Amendment because the 90-day grievance restriction was in retaliation for Plaintiff exercising his right to file grievances.  (*Id.* at PageID #87–88, 90).

The Sixth Circuit has held that "an inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Yet this protection extends only to non-frivolous grievances.  *Id.*; *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018).  "To succeed on a First Amendment claim of retaliation, a plaintiff must establish three elements: (1) he engaged in the protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the protected conduct."  *Harris*, 2024 U.S. App. LEXIS 2772, at *6 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).  Under the first element, protected conduct includes an inmate's First Amendment right to file grievances.  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)

The Court finds Defendants' argument unpersuasive.  Under the First Amendment, filing non-frivolous grievances is an undisputed right.  *Herron*, 203 F.3d at 415.  For the claim of retaliation, the amended complaint alleges that Plaintiff filed grievances concerning the relevant assaults and prison officials' failures to report the assaults to law enforcement.  (ECF No. 6, ¶¶ 79, 87).  Plaintiff maintains that these constituted legitimate grievances under the First Amendment, which were filed after he was the victim of two unprovoked assaults.  (ECF No. 15, PageID #135).  Thus, Plaintiff' alleges that he engaged in protected conduct; thereby satisfying the first element of First Amendment retaliation claim.  Plaintiff's allegations also satisfy the second element.  After both assaults, Plaintiff alleges he was placed on a 90-day ban from filing any grievances.  (ECF No. 6, ¶¶ 115, 138).  Such a ban not only deters an ordinary person from continuing to file grievances, but effectively eliminates a person's ability to engage in any form of the protected

15

conduct.  As to the third element, Plaintiff argues that Defendants' decision to enact the 90-day ban was based, in part, on Plaintiff's previous grievance filings after the March 18th and September 1st Assaults.  (ECF No. 15, PageID #136).  Defendants do not refute Plaintiff's arguments but argue that the grievance restriction was reasonable under Sixth Circuit precedent.  (ECF No. 14, PageID #123–24).

Plaintiff and Defendants both cite *Hoffmeyer v. Rose*, 2011 U.S. Dist. LEXIS 21846 (N.D. Ohio Mar. 4, 2011), as support for their arguments as to whether the grievance ban was constitutional.  In *Hoffmeyer*, the district court held that "prison officials may place reasonable limits on a prisoner's access to the grievance process." *Id*. at *5.  Notably the restriction measures in *Hoffmeyer* did not prohibit an inmate from filing non-frivolous claims because there were screening procedures in place to check the inmate's grievances for redundancy or frivolousness. *Id*. at *6.  Plaintiff correctly distinguishes *Hoffmeyer* from this matter because, as alleged in the amended complaint, Plaintiff's right to file grievances was not merely modified but was eliminated entirely, barring both frivolous and non-frivolous grievances alike.  (ECF No. 15, PageID #136). Because the alleged restrictions would violate the First Amendment, the amended complaint sufficiently alleges violations of the right to file grievances and for retaliation under the First Amendment.  Accordingly, Defendants' request to dismiss Counts 5, 7, 12, and 13 is **DENIED WITHOUT PREJUDICE**.[9]

---

[9] After discovery, Defendants may raise arguments for dismissing these claims at the summary judgment phase if evidence is uncovered that establishes the grievance restriction did not eliminate Plaintiff's right to file non-frivolous grievances or the underlying grievances were frivolous.

**B.    Subsequent Motion to Dismiss**

*1.    Failure to Allege a Claim Against Defendant Branch*

Subsequent Defendants move the Court to dismiss all claims against Defendant Branch because the amended complaint does not sufficiently allege any individual actions taken by Defendant Branch.  (ECF No. 23, PageID #165–66).  In a § 1983 action, a defendant cannot be held liable "absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct." *Johnson v. Ohio Dep't of Corr. Rehabs.*, 2023 U.S. Dist. LEXIS 106917, at *8–9 (S.D. Ohio June 20, 2023).  A plaintiff "merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004).  The Sixth Circuit has held that for a supervisor to be liable under §1983, they must "at least implicitly authorize, approve, or knowingly acquiesce in the unconstitutional conduct." *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982).  Still, a "mere failure to act will not suffice to establish supervisory liability." *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).  Additionally, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 668.

Plaintiff named Defendant Branch in Count 1 and Count 3 of the amended complaint.[10] (ECF No. 6, ¶ 90, 102).  In Count 1, Plaintiff alleges that Defendant Branch "demonstrated a deliberate indifference to conditions that posed a substantial risk of harm to Plaintiff" by "ignoring the Protective Control Order" previously issued at TCI.  (*Id*. ¶¶ 90–93).  In Count 3, Plaintiff alleges that Defendant Branch "demonstrated a deliberate indifference to conditions that posed a

---

[10] Defendant Branch was also named in Count 8, but the claim has been abandoned and dismissed.  *See* Section IV.A.4.

17

substantial risk of serious harm to Plaintiff" by "ignoring written notices" by Plaintiff about his cellmate's threats towards him. (*Id.* ¶¶ 102–04).

Defendant Branch argues that Plaintiff has only "stated her job title and asserts she 'ignored' a protective control order." (ECF No. 23, PageID #166). Defendant Branch argues Plaintiff does not assert that she approved or disapproved a transfer request, she directed Plaintiff be placed in general population, or she would inherently make those decisions as part of her job. (*Id.* at PageID #165). Reviewing the amended complaint, other than conclusory allegations, Plaintiff does not allege facts supporting his allegations that Defendant Branch demonstrated deliberate indifference by ignoring the protective control order and Plaintiff's written notices about the threats of his cellmate. Plaintiff does not provide facts that Defendant Branch received notice of the protective control order, but rather states that the request was specifically forwarded to her. (ECF No. 6, ¶ 22). In the amended complaint, Plaintiff merely recites the elements of an Eighth Amendment Cruel and Unusual Punishment and Duty to Protect claim and includes Defendant Branch's name. Plaintiff does not provide sufficient facts that would allow the Court to "draw the reasonable inference" that Defendant Branch is "liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678.

The Court finds that the amended complaint lacks specific allegations that Defendant Branch individually engaged in the conduct alleged under Counts 1 and 3. The amended complaint contains general allegations and Plaintiff fails to specify the harms caused specifically by Defendant Branch. The allegations that the defendants, including Defendant Branch, deliberately ignored the protective order and written notices of Plaintiff's cellmate's threats, are too broad, conclusory, and lack sufficient factual allegations in support. Thus, the amended complaint fails to sufficiently assert a claim against Defendant Branch. *See Kurek v. Ohio Dep't of Dev.*

*Disabilities*, No. 3:16-cv-623, 2017 U.S. Dist. LEXIS 65473, at *15–16 (N.D. Ohio Jan 20, 2017) ("Such conclusory allegations of collective, unspecified, and undifferentiated wrongdoing is not sufficient: 'vaguely lumping all defendants together without providing any factual allegations that specify separate acts' fails to satisfy the *Iqbal*/*Twombly* standard."). Thus, the remaining claims against Defendant Branch in her individual capacity (Counts 1 and 3) are **DISMISSED**.

2.      *Claims against Defendant Lambert*

Subsequent Defendants solely present arguments for the dismissal of two groups of claims asserted against Defendant Lambert: (i) claims that Defendant Lambert violated the Constitution by denying Plaintiff's grievance and placing him on a grievance restriction (Counts 5, 7, 12, and 13); and (ii) claims for spoliation of evidence (Counts 8 and 13B).  As discussed previously, Plaintiff's claims for spoliation have been abandoned and therefore dismissed.  *See* Section IV.A.4.

As for the grievance-related claims against Defendant Lambert, Subsequent Defendants argue that they should be dismissed because there is no constitutional violation for merely denying a grievance and imposing a grievance restriction.  (ECF No. 23, PageID #23).  First, Plaintiff only asserted grievance-related claims for Defendant Lambert and others placing a ban on filing grievances (Counts 5, 7, 12, and 13), not for the denial of any particular grievance.  (ECF No. 6, PageID #87–88, 89–90).  Second, Subsequent Defendants argue that prison officials may place reasonable restrictions on a prisoner's access to the grievance process under Sixth Circuit precedent.  (*Id*. at PageID #166).  However, as discussed in Section IV.A.5, filing non-frivolous grievances is an undisputed right under the First Amendment and a bar on filing all grievances (both frivolous and non-frivolous) with no screening procedure, as alleged in the amended complaint, does not constitute a "reasonable" restriction.  *See Herron*, 203 F.3d at 415; *Hoffmeyer*,

2011 U.S. Dist. LEXIS 21846, at *5–6.  Thus, Subsequent Defendants' request to dismiss Counts 5, 7, 12, and 13 against Defendant Lambert is **DENIED WITHOUT PREJUDICE**.

### C.    Robinson Motion to Dismiss

Defendant Robinson provides arguments for why the Court should dismiss the following claims against him: (i) Counts 1 and 9; (ii) Counts 4B and 11; (iii) Count 6; and (iv) Count 13B. (ECF No. 31, PageID #197–201).  Because Counts 4B and 13B have been dismissed, the Court need not address the arguments for those counts.

#### 1.    Counts 1 and 9

Defendant Robinson argues that Counts 1 and 9 should be dismissed as to him because the amended complaint does not specifically allege or provide sufficient details of any action or inaction taken by Defendant Robinson which led to inmates assaulting Plaintiff.  (ECF No. 31, PageID #197–98).  Defendant Robinson argues that there are no allegations that: (i) he had any role in deciding to place Plaintiff in general population; (ii) he directed Plaintiff's placement in general population; or (iii) his position had any inherent authority to make such determinations. (*Id.* at PageID #198).  To the extent that Plaintiff claims a constitutional violation based on Defendant Robinson's failure to respond to his kite (grievance), he argues that courts have often dismissed such claims against supervisors.  (*Id.* at PageID #199).  Plaintiff responds that the Court must account for Defendant Robinson's position as the "Administrative Assistant to the Warden" at ManCI and argues that the amended complaint has given Defendant Robinson fair notice of the claim asserted against him.  (ECF No. 33, PageID #219–20).

The Court finds Defendant Robinson's arguments persuasive.  For Count 1, the amended complaint alleges that the warden at TCI issued a protective custody order for Plaintiff, this protective order was forwarded to ManCI when Plaintiff was transferred there, Defendants ignored

20

the protective order and placed Plaintiff in general population at ManCI, and Defendants ignored Plaintiff's warnings about a risk to his person.  (ECF No. 6, ¶¶ 19–24, 89–93).  For Count 9, the amended complaint alleges that "Defendants McConahay, Robinson, Kennard and Booth had clear knowledge of the potential risk of serious physical harm to the Plaintiff" but they did not place Plaintiff in protective custody and ordered assignment of his housing unit.  (*Id.* ¶¶ 125–26).  But there are no specific allegations that Defendant Robinson took any action with relation to or played any role in the above allegations.  There are general, conclusory allegations that Defendants, as a group, ignored the protective order from TCI, ignored Plaintiff's warnings, and had clear knowledge of a potential risk to Plaintiff.  But there are no allegations that Defendant Robinson was specifically made aware of these warnings or the protective order.

The amended complaint alleges that Defendant Robinson is the Administrative Assistant to the Warden at ManCI, but this allegation does not sufficiently establish that he had any role in the housing assignments of inmates at ManCI and whether they are afforded protective custody. Even if the Court accepted the general and conclusory allegations that Defendant Robinson was aware of a substantial risk to Plaintiff, there are insufficient allegations to establish that he could have taken any actions or had any authority in relation to placing Plaintiff in protective custody. As a result, Plaintiff has failed to state a claim for relief under Counts 1 and 9 against Defendant Robinson.  Count 1 and 9 are therefore **DISMISSED** as to Defendant Robinson.

### 2.     *Count 11*

Defendant Robinson argues that Count 11 (Failure to Provide Adequate Medical Care) should be dismissed because the amended complaint does not allege what personal role he took in Plaintiff's healthcare, and he cannot otherwise be held liable as a supervisor under a theory of respondeat superior.  (ECF No. 31, PageID #199–200).  Plaintiff does not respond to Defendant

Robinson's arguments for the dismissal of Count 11.  Thus, Plaintiff has abandoned Count 11 as to Defendant Robinson.  *See USA Parking Sys.*, 2022 U.S. Dist. LEXIS 18320, at *24.  Even if Plaintiff had not abandoned this specific claim, the amended complaint does not contain sufficient allegations to demonstrate that Defendant Robinson had any role or took any actions with relation to the denial of Plaintiff's medical treatment.  For these reasons, Count 11 is **DISMISSED** as to Defendant Robinson.

> 3. *Count 6*

Under Count 6, the amended complaint asserts that Defendant Robinson violated Plaintiff's First Amendment right of access to the courts because he ordered the destruction of Plaintiff's legal materials after Plaintiff was found guilty of possessing contraband.  (ECF No. 6, PageID #81, 87).  Defendant Robinson argues that Plaintiff's claim against him fails because there are no allegations of litigation prejudice or injury (a required element for an access to the courts claim).  (ECF No. 31, PageID #200).  Plaintiff responds that his claim should not be dismissed because: (i) the amended complaint alleges that some of the seized material included files related to a habeas petition pending before the Supreme Court; and (ii) a determination of legal prejudice is an evidentiary issue to be resolved after the pleading stage.  (ECF No. 33, PageID #221).

Although prisoners have a constitutional right under the First Amendment of access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), this right is not unlimited, *see Lewis v. Casey*, 518 U.S. 343, 349, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).  To allege a constitutional violation, a plaintiff must show that he suffered "an actual injury to existing or contemplated litigation" as a result of being denied access to legal resources.  *Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003).  The plaintiff must allege specific actions taken by a defendant that hindered his efforts to pursue or caused the rejection of a non-

frivolous legal claim.  *See Lewis*, 518 U.S. at 351–53 (1996); *Clark v. Corr. Corp. of Am.*, 113 F. App'x 65, 68 (6th Cir. 2004) (affirming a district court's *sua sponte* dismissal of a prisoner's claim of denial of access to the courts where the prisoner "offered no factual allegation suggesting that defendants prevented him from presenting a non-frivolous legal claim"); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (explaining that a prisoner must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim"). A prisoner's right of access to the courts does not extend to every type of claim or legal action he wishes to pursue.  Rather, the right is limited only to a prisoner's filing of a non-frivolous direct appeal in his criminal case, a habeas corpus application, or a civil rights action challenging the conditions of his confinement.  *Courtemanche*, 79 F. App'x at 117.

Plaintiff has not alleged facts sufficient to demonstrate that he suffered any injury or constitutional deprivation as a result of being denied access to legal resources.  Under Count 6, Plaintiff alleges that Defendant Robinson ordered the destruction of Plaintiff's legal materials. (ECF No. 6, ¶ 117).  There are no allegations that Plaintiff was hindered in pursuing or suffered rejection of any legal claim based on this alleged destruction.  The amended complaint alleges that legal files related to a pending habeas petition before the Supreme Court and a legal book were seized on April 13, 2022 and never returned.  (*Id.* ¶ 63).  But these allegations do not explain or demonstrate how and why the seizure and destruction of these materials hindered or prejudiced his ability to pursue this habeas petition.  There are no allegations as to how this habeas petition was resolved (whether for or against Plaintiff) and insufficient information to aid the Court in its search for the answer.  Plaintiff merely alleges, in purely conclusory terms, that Defendants' conduct denied Plaintiff access to the courts.

This allegation is conclusory, speculative, and falls well short of an allegation of an actual, legally cognizable injury for purposes of an access-to-the-courts claim. *See, e.g.*, *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003) (affirming dismissal of a prisoner's access-to-the-courts claim where his allegation of actual prejudice was "purely conclusory" and he failed to allege, among other things, "the exact nature of his frustrated claims"); *Fields v. County of Lapeer*, No. 99-2191, 2000 U.S. App. LEXIS 29182, 2000 WL 1720727, at *2 (6th Cir. Nov.8, 2000) ("A speculative injury does not vest a plaintiff with standing [to pursue an access to the courts claim] . . . ."). Thus, Count 6 is **DISMISSED** as to Defendant Robinson.

### D.    McConahay Motion to Dismiss

#### 1.    *Counts 5, 6, 11, 12, 13*

Defendant McConahay argues that the above counts should be dismissed because Plaintiff has not alleged any facts that show Defendant McConahay took any action or had any personal involvement with regard to these causes of action. (ECF No. 32, PageID #208). Defendant McConahay notes that the only allegations against him under Counts 5, 6, 11, 12, and 13 are that he "ratified" or "approved" the actions of others. (*Id.* at PageID #208–09). He argues that these statements are not factual allegations but vague conclusions that lack any explanation as to how he "approved" or "ratified" any actions. (*Id.* at PageID #209). Plaintiff responds that the amended complaint does not assert a respondeat superior theory of liability. He argues that Defendant McConahay is liable because he is a prison official with final decision-making authority (as the warden of ManCI) and he ratified the actions of his subordinates by "failing to meaningfully investigate and punish allegations of unconstitutional conduct." (ECF No. 33, PageID #217–18).

Plaintiff asserts a theory of liability based on ratification that is not used to establish liability for an individual defendant, but for establishing liability for a municipal entity under

*Monell*.[11]  "A municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, 'solely because it employs a tortfeasor.'"  *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).  Thus, to impose liability on a municipal entity under § 1983, a plaintiff must prove: (i) a violation of a constitutional right; and (ii) the violation was caused by an official policy or custom.  *Monell*, 436 U.S. at 690–92; *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).  For the second prong, a plaintiff may prove an official policy or custom by showing either: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. *2013) (citing Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).  For the ratification theory of liability, there are two ways to show ratification: "(1) when the governmental entity 'fail[s] to meaningfully investigate and punish allegations of unconstitutional conduct,' *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020), and (2) when an official with policymaking authority issues a final decision affirming a subordinate's decision, *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118–19 (6th Cir. 1994)."  *R.L. v. Knox Cty.*, No. 24-5002, 2024 U.S. App. LEXIS 28458, at *20 (6th Cir. Nov. 6, 2024) (alteration in original).

First, Plaintiff made no allegations and provided no evidence that Defendant McConahay issued any final decision affirming any subordinate's decision.  Second, Plaintiff's argument is otherwise unavailing because he is attempting to establish liability on Defendant McConahay based on a theory of municipal liability.  The Court is unaware of any district court in the Sixth

---

[11] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

Circuit assigning liability to an individual defendant based on a theory applying to municipal liability. The primary case cited Plaintiff to establish "ratification liability" against Defendant McConahay is *Robertson v. Taylor*, No. 1:23-cv-891, 2024 U.S. Dist. LEXIS 22667 (N.D. Ohio Feb. 8, 2024). (ECF No. 33, PageID #217). That case is inapt because it involved the district court analyzing the ratification theory under *Monell* to determine whether the City of Cleveland was liable for alleged unconstitutional acts by City of Cleveland police officers. *Roberston*, 2024 U.S. Dist. LEXIS 22667, at *8. Simply put, Plaintiff's theory of liability fails. Moreover, the Court has already dismissed all claims asserted against Defendant McConahay in his official capacity. Plaintiff must allege actions that establish liability for Defendant McConahay in his individual capacity. Plaintiff has failed to do so. Accordingly, Counts 5, 6, 11, 12, 13 are **DISMISSED** as to Defendant McConahay.

### 2. Counts 1 and 3

Defendant McConahay argues that the failure to protect claims under Counts 1 and 3 fail to state a claim against him because the allegations do not establish the required subjective element—that the defendant was aware of and disregarded a substantial risk of harm.[12] (ECF No. 32, PageID #209). He argues that there are no allegations of his own personal involvement in the decision to place Plaintiff in general population or that he even had possession or knowledge of the alleged protective order—other than the conclusory allegation that Defendant McConahay ignored a protective order. (*Id.* at PageID #210). For Count 1, Plaintiff responds that questions of who knew about and who ignored the protective order are questions to be decided by a motion for summary judgment after discovery or by the trier of fact. (ECF No. 33, PageID #216). For Count

---

[12] Defendant McConahay includes Count 5 in this section of his brief. Yet Count 5 is not a failure to protect claim. The Court believes this to be a typographical error and finds that Defendant McConahay meant to refer to Count 4B. Because that count has already been dismissed, the Court will forgo any analysis on that count.

3, Plaintiff argues that there are sufficient factual allegations to establish that Defendant McConahay had actual knowledge of the impending threat against Plaintiff based on the written notices submitted by Plaintiff.  (*Id.* at PageID #216–17).

Plaintiff specifically alleges that Defendant McConahay received notice of threats against Plaintiff by his cellmate before the March 18th Assault.  (ECF No. 6 ¶¶ 31–32).  Assuming the truth of these allegations, the Court finds that the amended complaint contains sufficient allegations to demonstrate that Defendant McConahay had subjective awareness of a substantial risk to Plaintiff before the March 18th Assault.  Thus, Defendant McConahay's request to dismiss Counts 1 and 3 is **DENIED WITHOUT PREJUDICE**.

## IV.    CONCLUSION

For the foregoing reasons, the Initial Motion to Dismiss (ECF No. 14), Subsequent Motion to Dismiss (ECF No. 23), Robinson Motion to Dismiss (ECF No. 31), and McConahay Motion to Dismiss (ECF No. 32) are **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants' request to dismiss all claims under the *Leaman* doctrine is **DENIED**;

2. Defendants' request to dismiss Counts 5, 7, 12, and 13 for failure to state a claim is **DENIED**;

3. Defendant McConahay's request to dismiss Counts 1 and 3 is **DENIED**;

4. All claims against Defendants in their official capacities are **DISMISSED WITH PREJUDICE**;

5. Count 4B is **DISMISSED;**

6. Counts 8 and 13B are **DISMISSED;**

7. Counts 1 and 3 are **DISMISSED** as to Defendant Branch;

8. Counts 1, 6, 9, and 11 are **DISMISSED** as to Defendant Robinson; and

9.  Counts 5, 6, 11, 12, 13 are **DISMISSED** as to Defendant McConahay.[13]

**IT IS SO ORDERED.**

Date: December 11, 2024

_____

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**

---

[13] All claims against Defendants Robinson, Branch, and Sheppard have been dismissed.  The following claims remaining pending before the Court: (i) Count 1, against Defendants Chambers-Smith and McConahay; (ii) Count 2, against Defendant Kennard; (iii) Count 3, against Defendants Chambers-Smith, McConahay, and Booth; (iv) Count 4, against Defendant Murin; (v) Count 5, against Defendants Chambers-Smith, Booth, and Lambert; (vi) Count 6, against Defendants Chambers-Smith, Booth, and Lambert; (vii) Count 7, against Defendants Booth and Lambert; (viii) Count 9, against Defendants Chambers-Smith, McConahay, Kennard, and Booth; (ix) Count 10, against unspecified Jane Doe Nurse Defendant; (x) Count 11, against Defendants Chambers-Smith, Blankenship, and Lambert; (xi) Count 12, against Defendants Chambers-Smith, Blankenship, and Lambert; and (xii) Count 13, against Defendants Chambers-Smith, Blankenship, and Lambert.