IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Darryl Smith, <br><br> Plaintiff, <br><br> vs. <br><br> Annette Chambers-Smith, *et al.*, <br><br> Defendants. | CASE NO. 1:24-cv-505 <br><br> MAGISTRATE JUDGE <br> JAMES E. GRIMES JR. <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Darryl Smith has filed a combined objection to the Court's report and recommendation and motion to disqualify and recuse. Doc. 63. This order adjudicates the motion to disqualify and recuse. For the reasons discussed below, the motion is denied.

*Background*

Then represented by Attorney Larry D. Shenise, Smith filed this civil rights action in March 2024. *See* Doc. 1. It was assigned to District Judge Fleming.

After granting in a part and denying in part a motion to dismiss, Doc. 34, Judge Fleming scheduled a case management conference, Doc. 36. In their report of their planning meeting, the parties consented to the case being assigned to a magistrate judge. Doc. 37. The District Court thus transferred this case to this Court's docket. In March 2025, the Court held a case

management conference, which was attended by Shenise and Defendant's counsel, B. Alexander Kennedy. *See* Doc. 39. During the conference, the Court scheduled a status conference for July 1, 2025, *id.*, which it later moved to July 7, 2025, *see* Non-Document Order (June 24, 2025).

Both Shenise and Kennedy attended the July 7, 2025 conference. *See* Non-Document Order July 7, 2025. During the conference, Shenise stated that "he intend[ed] to file a motion to withdraw from his representation of [Smith] by the end of [that] week, based on [Smith's] refusal to engage with counsel." *Id*.

Later that day, the Court received Smith's "notice," in which he told the Court that he had "terminated" Smith, effective June 25, 2025. Doc. 41. Two weeks later, Smith filed a letter in which he told the Court that he had contacted three attorneys about representing him. Doc. 42. He also asked the Court to "'stay' [the] proceedings … for only a few weeks long enough for them to review [his] case." *Id*. The next day, the Court granted Smith's motion terminating Shenise, stayed case deadlines for 30 days, and scheduled a status conference for August 25, 2025. Non-Document Order (July 22, 2025).

Smith appeared pro se at the August 25, 2025 hearing. *See* Doc. 43. Given concerns that Smith raised about his access to mail and his institution's law library, the Court scheduled a follow-up conference for September 22, 2025. *See id*. As is discussed more fully below, the recording of the August 25, 2025 conference reveals that near the end of the conference, the Court discussed

2

with Smith the fact that he would need to participate in a deposition.[1] *See* Hearing at 10:34:18–10:35:15, Smith v. Chambers-Smith, No. 1:24-cv-0505 (Aug. 25, 2025). At that point, Smith mentioned that he had hearing difficulties and would thus require hearing assistance for his deposition. *Id*. at 10:34:48–10:35:15. The court then informed Attorney Kennedy that he was on notice of Smith's hearing issues.

In September 2025, Smith submitted several filings. In the first of these, Smith provided notice of disabilities including hearing loss. Doc. 47. In another, he purported to withdraw his consent to having this proceeding conducted by a magistrate judge. Doc. 48.

In a third, Smith moved "to rehear status conference." Doc. 49. In this motion, he asserted that during the August conference, he "immediately told" the Court about his disabilities and "repeatedly made complaints that he did not hear everything being said." *Id*. at 1. According to Smith, the Court ignored his complaints, "allowed" Defendant's attorney "to make unopposed oral motions, false claims[,] and statements," and otherwise violated the Americans with Disabilities Act. *Id*. Smith asserted that the "results" of the conference "must be vacated and remanded" and heard by a different judge. *Id*. at 2. And he asserted that the Court should be replaced for "disregarding" the Americans with Disabilities Act and "unfairly disadvantage[ing]" him. *Id*.

---

[1] During the July 7, 2025 status conference, Shenise raised an issue about Smith's deposition. *See* Non-Document Order (July 7, 2025).

3

Smith's fourth filing asked the Court to prevent Defendants from taking his deposition without providing him with hearing aids and "adequate eyeglasses." Doc. 50. Because Defendants did not respond, the Court considered Smith's motion as unopposed and "construed [it] as a request that the Defendants provide hearing assistance or otherwise accommodate [Smith's] medical needs to ensure he is able to fully participate in his anticipated deposition." Non-Document Order (Oct. 1, 2025). So construed, the Court granted the motion. *Id.*

In response to some of Smith's comments in his filings, the Court ordered Smith's Warden "to provide assistive measures necessary to ensure [that Smith] c[ould] fully participate in [an] upcoming status conference set for September 22, 2025." Non-Document Order (Sept. 16, 2025).

The Court held a status conference on September 22, 2025. *See* Doc. 54. "During the conference, Smith expressed that he had submitted kites requesting access" to the law library "but that he was still denied access and was disciplined as a consequence of submitting kites requesting law library access." Doc. 56, at 1–2. Two days after the conference, the Court issued an order in which it:

> Reiterate[d] that the prison must provide Smith access to the law library just as any person in Smith's housing or disciplinary status would receive. To be clear, the prison [was] directed to give Smith library access appropriate to his status, unless Defendants provide the Court with a basis— separate and apart from the fact that Smith filed a

4

> kite requesting law library access—to deny such access.

*Id.* at 2.

Also during the conference, the Court and the parties discussed "Smith's concerns with regard to receiving mail, including legal mail and mail from his former counsel." Doc. 54. The Court ordered "Defendants [to] file a legal mail log after the end of September to include legal mail through the end of September." *Id.* Defendants complied with this order. *See* Doc. 59, 59-1.

In October 2025, Smith submitted a filing, which, among other things sought the Court's recusal. *See* Doc. 63.

*Discussion*

Under the Due Process Clause, every litigant is entitled to an unbiased adjudicator. *Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008); *see In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases."). By statute, a magistrate judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge must also recuse if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Section 455 "imposes an objective standard: a judge must disqualify himself 'where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Burley*

5

*v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) (quoting *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013)). Because "[t]he standard is … objective[,] … the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). The moving party bears the burden of showing that recusal or disqualification is warranted. *Burley*, 834 F.3d at 616.

"[B]ias must be personal, or extrajudicial, in order to justify recusal." *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989). "'Personal' bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." *Id.* Similarly, an extrajudicial source is one that "derives from a source outside judicial proceedings." *Liteky v. United States*, 510 U.S. 540, 554 (1994). And "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555. According to the Supreme Court, judicial rulings alone "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required … when no extrajudicial source is involved." *Id.* Instead, such rulings may be "grounds for appeal," but "not for recusal." *Id.*

Given the above, Smith's motion fails. He relies only on the Court's rulings and its interactions with the parties during conferences. He points to no "extrajudicial source" of bias and provides nothing to show that his is that

6

"rarest [of] circumstances" in which the Court's rulings "evidence the degree of favoritism or antagonism required" for recusal. *Liteky*, 510 U.S. at 555.

Moreover, the record shows that Smith's motion is factually baseless and is instead based on a strained, invented, and out-of-context interpretation of the events in this case.

Smith begins by asserting that the Court "[i]nappropriately … held a prompt so called ex parte 'conference' with Shenise," on July 7, 2025, "about Smith firing Shenise (and ruining their plans).[2] They excluded Smith and Smith was banned being heard on his claims." Doc. 63, at 2.

It is accurate that the Court held a status conference in July 2025. *See* Non-document order (July 7, 2025). But the rest of Smith's assertion about this conference is inaccurate. Whatever Smith means by *prompt*, this conference was set in March 2025. *See* Doc. 39. And the conference was not ex parte; it was scheduled on the docket and attended by counsel for both sides.[3] *See* Non-document order (July 7, 2025). Further, Smith was neither "excluded" nor "banned." Rather, his then-counsel never told the Court that Smith wished to

---

[2] In an attached affidavit, Smith says that through his "people and street contacts," he "learned that [the Court] and defense counsel agreed to assist Shenise to settle out the case so *he* could get the money." Doc. 63-1, at 2. He fails, however, to provide any facts to support this assertion. Fantastical assertions, unsupported by facts neither warrant a response nor recusal. *See Walsh v. Comey*, 110 F. Supp. 3d 73, 77 (D.D.C. 2015) (citing cases); *Sloan v. Boeing Co.*, No. 92-1014, 1994 WL 171147, at *1 & n.3 (D. Kan. Apr. 1, 1994).

[3] Recall that, as the Court's docket reflects, it was not until after this conference that the Court received Smith's notice that he'd terminated Shenise. Doc. 41.

7

attend. As is typical in counseled cases brought under Section 1983 by prisoners, only counsel attended the conference.

Smith next references the August 2025 conference. Doc. 63, at 2. He asserts that he "instantly and repeatedly told [the Court] about his diagnosed hearing disability and other disabilities." *Id*. He adds that "he very specifically made it clear [that] he could not understand everything being said by [the Court] and" Defendants' counsel. *Id*. According to Smith, the Court "disregarded [his] disabilities and did nothing to accommodate" them. *Id*. He also says that "[t]he entire conference was one sided[,] as [the Court] granted everything" Defendants' counsel asked for and "[e]verytime Smith attempted to speak, [the Court] cut him off in only second and shut him down." *Id*.

Fortunately, the Court records its conferences. And review of the recording of the August 25, 2025 conference reveals that none of what Smith asserts has any basis in fact.

Smith's first mention of any issue in relation to his hearing came about 11 minutes into the hearing, at time 10:32:22.[4] *See* Hearing at 10:32:22, Smith v. Chambers-Smith, No. 1:24-cv-0505 (Aug. 25, 2025). But Smith mentioned this issue in relation to his access to the prison law library. He said nothing about having difficulty hearing the Court.

---

[4] The conference first began near 10:00 a.m. But officials at Smith's institution did make him available at that time. So the conference's other participants waited until 10:21 a.m., when Smith was made available, to commence the conference. Time 10:32:22 was thus about 11 minutes into the hearing.

8

Then, beginning at 10:34:18, the Court noted that Smith would have to participate in a deposition. Over the next 40 seconds, Smith first said that he didn't understand what the Court had just said. The Court then asked Smith if he understood what a deposition is and he immediately responded, "yes." The Court then explained that he would have to participate or he could be subject to sanctions and Smith interjected, "I know what that is, I've been through that before."

Starting at time 10:34:48, Smith said that "the only thing is that I'm going to need hearing assistance and stuff like that" at his deposition. The Court then asked whether Smith has hearing difficulties. And Smith responded that he did. The Court then informed Attorney Kennedy that he was on notice of Smith's hearing issues.

Smith neither "instantly" nor "immediately" told the Court about his hearing difficulties. And he did not tell the Court that he required hearing assistance for the conference.

Further, for someone with hearing difficulties, he displayed an uncanny ability to respond to the Court's questions and sometimes interject before the Court could finish its questions. Also, Smith's ability to present lengthy explanations of his positions, such as his alleged lack of access to the law library, *see* Hearing at 10:27:13–10:28:15, Smith v. Chambers-Smith, No. 1:24-cv-0505 (Aug. 25, 2025), belies any claim that the Court "cut him off" or "shut him down."

9

Finally, there is no basis to say that the Court "granted everything" Defendants' counsel asked for. Rather, the minutes from the conference reflect that the Court directed counsel to take certain actions. Doc. 43.

Smith next asserts that in an order issued on September 16, 2025, the Court dismissed his claims of hearing disability "and downplay[ed] it as nothing." Doc. 63, at 2. This assertion cannot be squared with the order that Smith cites. In that order the Court stated that Smith's filings "illustrate that he requires hearing assistance to best participate in his action." Non-Document Order (Sept. 16, 2025). The Court thus ordered Smith's Warden "to provide assistive measures necessary to ensure [that Smith] can fully participate in the upcoming status conference set for September 22, 2025." *Id*.

Smith notes that the Court held a conference on September 22, 2025. Doc. 63, at 3. He says that although this hearing was conducted by video, "there was no text captioning, no TTY, and no TDD." *Id*. Smith says that "[o]nce again[,] [he] complained and was blown off again." *Id*. He adds that the Court "cut off Smith from speaking in seconds." *Id*.

As before, the recording of the conference does not support Smith's assertions. At the beginning of the conference, he noted that there were no captions on his screen and stated that the sound was muffled if participants spoke too fast, but affirmed that he could hear the Court "as long as you are talking at that speed." Hearing at 10:00:38–10:00:52, Smith v. Chambers-Smith, No. 1:24-cv-0505 (Sept. 22, 2025). And when the Court and Smith had

10

difficulty hearing Attorney Kennedy, the Court asked counsel to make his voice more audible before asking Smith whether he could hear counsel. *Id.* at 10:01:00–10:01:51. And Smith responded "that's better." *Id.* at 10:01:50.

During the hearing, Smith managed to raise his concerns, often at length, and have a discussion with the Court. *See, e.g, id.* at 10:02:48–10:05:48. Indeed, his concerns led to orders designed to address them. *See* Docs. 54, 56. So the record does not support—indeed it belies—Smith's assertions that he was "blown off" of "cut off … in seconds" by the Court.

Finally, Smith alleges that through the status conferences in August and September, the Court has been a party to violations of the Americans with Disabilities Act. Doc. 63, at 3, 6–8. But he has ignored both what actually happened at those conferences and the Court's efforts to ensure that he could participate in the conferences. Further, although the Act applies to state prisons and the "services, programs, or activities," *of a prison, see* 42 U.S.C. § 12132, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10 (1998), Smith does not explain how the Act might apply to the *Court's* conferences, *see* 42 U.S.C. §§ 12111(5)(B)(i) (excluding the United States from the definition of the term *employer*), 12131(1) (defining the term public entity for purposes of 42 U.S.C. §§ 12132 through 12134); *see also Boso v. Rollyson*, No. 2:22-cv-17, 2023 WL 9316925, at *2 (N.D.W. Va. Nov. 1, 2023) ("federal courts are not subject to the ADA").

11

Smith also cites 28 U.S.C. § 1827(b). Doc. 63, at 6. But, by its terms, Section 1827 only applies "in judicial proceedings instituted *by the United States*." 28 U.S.C. § 1827(a), (b)(1) (emphasis added).

And, contrary to Smith's assertion, this case is not "an exact carbon copy twin of everything in" *Popovich v. Cuyahoga Cnty. Ct. of Common Pleas, Domestic Rels. Div.*, 276 F.3d 808 (6th Cir. 2002) (en banc). *See* Doc. 63, at 6. For one thing, unlike the underlying proceedings in *Popovich*, this proceeding is taking place in federal court. And this Court has never presented Smith with the "'option'" of "either give up his rights under the Disabilities Act or suffer[ing] a delay in the adjudication of [his] case." *Id.* at 816.

Smith also cites several Ohio cases concerning the hearing assistance the State of Ohio must provide in Ohio's courts. *See* Doc. 63, at 6–8. What these Ohio cases have to do with Smith's case in federal court is unclear. Moreover, and in any event, this Court has twice ordered Smith's warden to provide him with hearing assistance during this litigation. *See* Non-Document Order (Sept. 16, 2025); Non-Document Order (Oct. 1, 2025). So even if these state cases applied here, which they don't, the Court has acted on Smith's concerns about his condition.

\* \* \*

Smith's motion is based on his omission or misrepresentation of the events in this case. No objective observer "with knowledge of all the facts would conclude that th[is] judge's impartiality might reasonably be questioned.'"

12

*Burley*, 834 F.3d at 616. By relying on a version of events that varies from the reality reflected in the record, Smith has failed to carry his burden. *See id.*

*Conclusion*

To the extent that document 63 includes a motion to recuse, Doc. 63, it is DENIED.

IT IS SO ORDERED.

Dated: November 3, 2025

                                             */s/ James E. Grimes Jr.*
                                             James E. Grimes Jr.
                                             U.S. Magistrate Judge