**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DARRYL SMITH, | ) | CASE NO. 1:24-cv-505 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JAMES E. GRIMES JR. |
| ANNETTE CHAMBERS-SMITH, *et al.*, | ) | |
| | ) | **OPINION AND ORDER DENYING** |
| Defendants. | ) | **REQUEST TO WITHDRAW CONSENT** |
| | ) | |
| | ) | |

On September 9, 2025, Plaintiff Darryl Smith, proceeding *pro* se, filed a "Plaintiff's Notice of His Non Consent to Disposition by Magistrate", which the Court construes as a motion to withdraw consent to proceed before a magistrate judge ("Motion to Withdraw"). (ECF No. 48). The Motion to Withdraw states that Plaintiff: (i) "does not consent to any disposition, decisions nor adjudications nor trial by magistrates"; and (ii) "has never consented to any disposition, trial nor adjudications by magistrate and never signed anything so. Any such consent by the fired attorney was unauthorized and now withdrawn." (*Id.* at PageID #310).

On September 15, 2025, Magistrate Judge James E. Grimes, Jr. issued a Report and Recommendation ("R&R") recommending that the Court deny the Motion to Withdraw. (ECF No. 52). The R&R also gave the parties notice of the 14-day time limit for filing objections. (*Id.* at PageID #189–90). Plaintiff requested and was granted a 30-day extension to file objections. (ECF No. 58; Order [non-document] dated Oct. 2, 2025). On October 20, 2025, Plaintiff filed his objections to the R&R. (ECF No. 63).

First, it is not entirely clear whether Magistrate Judge Grimes had the authority to resolve Plaintiff's request to withdraw consent on his own or whether the matter required referral to the

1

undersigned for resolution. As noted in the R&R, there is a conflict among Sixth Circuit authority. (*See* ECF No. 52, PageID #337). In an unpublished table decision, a Sixth Circuit panel held that "[i]t is clear that once a case has been referred to a magistrate under § 636(c), the district judge is the only one who can withdraw the reference." *Milhous v. Metro. Gov't*, No. 99-5685, 2000 U.S. App. LEXIS 15351, at *3–4 (6th Cir. June 21, 2000) (citing *Fellman v. Fireman's Fund Ins. Co.*, 735 F.2d 55, 58 (2d Cir. 1984)). By contrast, a subsequent panel in *Moses v. Sterling Com. (Am.), Inc.*, 122 F. App'x 177 (6th Cir. 2005), held that it was appropriate for a magistrate judge to rule on a party's request to withdraw consent. The panel provided the following reasoning:

> The plain language of § 636(c) allows the magistrate judge to "conduct *any or all* proceedings in a jury or nonjury civil matter and order the entry of judgment." (emphasis added). A full referral to a magistrate judge allows the magistrate judge to oversee litigation in the same manner as a district judge would. In fact, a "§ 636(c)(1) referral gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003). The "magistrate judge may exercise plenary jurisdiction." *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 169 (6th Cir. 1993). It was therefore appropriate for Magistrate Judge King to rule on Moses's request to vacate the reference. . . .

*Moses*, 122 F. App'x at 181 (emphasis in original). Given the lack of binding authority and the inconsistent panel rulings, the Court agrees with the Magistrate Judge that the best course of action is for the undersigned to ultimately resolve Plaintiff's pending request to withdraw consent.[1]

Under the Federal Magistrates Act, a district court must conduct a *de novo* review of those portions of the R&R to which the parties have objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Absent objection, a district court may adopt a R&R without further review. *See Peretz*

---

[1] The Court notes that there is a split in out-of-circuit authority as well. *Compare Dowell v. Blackburn*, 932 F.2d 963 (4th Cir. 1991) (concluding that only the district judge had jurisdiction to rule on a motion to withdraw consent); *with Diaz v. Superior Energy Servs. LLC*, 341 F. App'x 26, 27 (5th Cir. 2009) (concluding that an appellant's argument that the district judge should have decided a motion to withdraw consent was frivolous); *Allen v. Wine*, 297 F. App'x 524, 529 (7th Cir. 2008); *McCarthy v. Bronson*, 906 F.2d 835, 839 (2d Cir. 1990) (determining that a magistrate judge could have declined to vacate a consent "[w]ith complete propriety").

2

*v. United States*, 501 U.S. 923, 939 (1991); *Thomas v. Arn*, 474 U.S. 140, 141–42 (1985). Here, Plaintiff generally objects to the R&R's recommendation to deny the Motion to Withdraw and its conclusion that there are no extraordinary circumstances warranting withdrawal of consent. (*See* ECF No. 63).

Once a civil case has been referred to a magistrate judge under 28 U.S.C. § 636(c), "[a] motion to vacate the reference . . . should only be granted upon motion of a party if that party shows '*extraordinary circumstances*.'" *Moses*, 122 F. App'x at 182 (quoting 28 U.S.C. § 636(c)(4)) (emphasis added); *see also* Fed. R. Civ. P. 73(b)(3) ("On its own for good cause—or when a party shows extraordinary circumstances—the district judge may vacate a referral to a magistrate judge under this rule."). "A party in a civil case has no absolute right to withdraw consent to trial and other proceedings before a magistrate judge." *Forsyth v. Brigner*, No. 97-3872, 1998 U.S. App. LEXIS 13076, at *5 (6th Cir. June 16, 1998) (citing *Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993)). The Court could find no binding authority as to what constitutes sufficient "extraordinary circumstances" for vacating a reference to a magistrate judge. That said, persuasive authority demonstrates that allegations of bias/prejudice, adverse rulings, and general dissatisfaction with a magistrate judge's decisions are insufficient. *See, e.g.*, *Moses.*, 122 F. App'x at 182; *Milhous*, 2000 U.S. App. LEXIS 15351, at *4; *Branch v. Umphenour*, 936 F.3d 994, 1004 (9th Cir. 2019) ("Neither mere dissatisfaction with a magistrate judge's decision, nor unadorned accusations that such decisions reflect judicial bias, will suffice.").

The extraordinary circumstances standard has been described as a "high bar that is difficult to satisfy." *Savoca v. United States*, 199 F. Supp. 3d 716, 721 (S.D.N.Y. 2016). Other courts have used some of the following factors when determining whether to revoke consent to the magistrate judge:

> undue delay, inconvenience to the court and witnesses, prejudice to the parties, whether the movant is acting pro se, whether consent was voluntary and uncoerced, whether the motion is made in good faith or is dilatory and contrived, possibility of bias or prejudice on the part of the magistrate, and whether the interests of justice would best be served by holding a party to his consent.

*Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021 (5th Cir. 1987) (internal citations omitted); *see also United States v. Neville*, 985 F.2d 992, 1000 (9th Cir. 1993) (considering timeliness of the motion to withdraw as an additional, relevant factor).

Although not clearly organized, Plaintiff appears to generally argue that attorney misconduct and bias/prejudice by Magistrate Judge Grimes constitute sufficient extraordinary circumstances to warrant withdrawal of consent. (*See* ECF No. 63). The Court finds that the record belies many of the assertions made by Plaintiff in his Motion to Withdraw. Plaintiff contends that he fired his attorney, in part, for waiving his right to jury trial and plotting with Magistrate Judge Grimes and opposing counsel to mediate the case. (*Id.* at PageID #429–30). Nothing in the record suggests that Plaintiff's former attorney waived his right to a jury trial or that the case was referred to mediation. The complaint contains a jury demand, (ECF No. 1, PageID #1), and the parties' Rule 26(f) report reflects that the case was not suitable for "Alternative Dispute Resolution (ADR) mechanisms", including mediation, at that stage of the proceedings, (ECF No. 37, PageID #267). After the case management conference, a status conference was scheduled for July 1, 2025 for "[t]he purpose of the conference is to discuss the status of the case and whether or not the parties are interested in mediation." (ECF No. 40, PageID #278). That is the sole mention of mediation on the record. Plaintiff appears to be under the misapprehension that his right to jury trial was waived by consenting to proceedings before the magistrate judge and that the status conference itself was an agreement to mediate.

4

Plaintiff states that Magistrate Judge Grimes: "Inappropriately . . . held a prompt so called ex parte 'conference' with Shenise (in July 2025) about [Plaintiff] firing Shenise (and ruining their plans). They excluded [Plaintiff] and [Plaintiff] was banned from being heard on his claims." (ECF No. 63, PageID #430). He contends that Magistrate Judge Grimes knew that Plaintiff had fired his attorney and never notified Plaintiff of the status conference. (*Id.* at PageID #437). However, the July 2025 status conference was scheduled in March 2025. (ECF No. 40, PageID #278). It was also not *ex parte*—as it was attended by representatives for both sides. (Minutes of Proceeding and Order [non-document] dated July 7, 2025). Moreover, there is no evidence that Plaintiff was excluded from the status conference or that Magistrate Judge Grimes was informed of the termination of Plaintiff's attorney until the date of the status conference. (*See id.*; ECF No. 41). Simply put, no evidence supports Plaintiff's accusations of inappropriate, *ex parte* meetings, or that Magistrate Judge Grimes had any knowledge prior to July 2025 that Plaintiff had fired his attorney, and the record contradicts such accusations.

Plaintiff then accuses Magistrate Judge Grimes of holding several conferences (August 25, 2025 and September 22, 2025) where he ignored and downplayed Plaintiff's hearing disability and failed to make reasonable accommodations to ensure Plaintiff's meaningful participation in the proceedings. (*See* ECF No. 63, PageID #430–31, 434–36). Magistrate Judge Grimes recently issued an order denying Plaintiff's alternative request for recusal in which he specifically addressed Plaintiff's accusations concerning disability accommodations. (*See* ECF No. 65). The Court adopts and incorporates the following analysis provided in that order:

> Smith next references the August 2025 conference. Doc. 63, at 2. He asserts that he "instantly and repeatedly told [the Court] about his diagnosed hearing disability and other disabilities." *Id*. He adds that "he very specifically made it clear [that] he could not understand everything being said by [the Court] and" Defendants' counsel. *Id*. According to Smith, the Court "disregarded [his] disabilities and did nothing to accommodate" them. *Id*. He also says that "[t]he entire conference was

5

one sided[,] as [the Court] granted everything" Defendants' counsel asked for and "[e]verytime Smith attempted to speak, [the Court] cut him off in only second and shut him down." *Id*.

Fortunately, the Court records its conferences. And review of the recording of the August 25, 2025 conference reveals that none of what Smith asserts has any basis in fact.

Smith's first mention of any issue in relation to his hearing came about 11 minutes into the hearing, at time 10:32:22. *See* Hearing at 10:32:22, Smith v. Chambers-Smith, No. 1:24-cv-0505 (Aug. 25, 2025). But Smith mentioned this issue in relation to his access to the prison law library. He said nothing about having difficulty hearing the Court.

Then, beginning at 10:34:18, the Court noted that Smith would have to participate in a deposition. Over the next 40 seconds, Smith first said that he didn't understand what the Court had just said. The Court then asked Smith if he understood what a deposition is and he immediately responded, "yes." The Court then explained that he would have to participate or he could be subject to sanctions and Smith interjected, "I know what that is, I've been through that before."

Starting at time 10:34:48, Smith said that "the only thing is that I'm going to need hearing assistance and stuff like that" at his deposition. The Court then asked whether Smith has hearing difficulties. And Smith responded that he did. The Court then informed Attorney Kennedy that he was on notice of Smith's hearing issues.

Smith neither "instantly" nor "immediately" told the Court about his hearing difficulties. And he did not tell the Court that he required hearing assistance for the conference.

Further, for someone with hearing difficulties, he displayed an uncanny ability to respond to the Court's questions and sometimes interject before the Court could finish its questions. Also, Smith's ability to present lengthy explanations of his positions, such as his alleged lack of access to the law library, *see* Hearing at 10:27:13–10:28:15, Smith v. Chambers-Smith, No. 1:24-cv-0505 (Aug. 25, 2025), belies any claim that the Court "cut him off" or "shut him down."

Finally, there is no basis to say that the Court "granted everything" Defendants' counsel asked for. Rather, the minutes from the conference reflect that the Court directed counsel to take certain actions. Doc. 43.

Smith next asserts that in an order issued on September 16, 2025, the Court dismissed his claims of hearing disability "and downplay[ed] it as nothing." Doc. 63, at 2. This assertion cannot be squared with the order that Smith cites. In that order the Court stated that Smith's filings "illustrate that he requires hearing assistance to best participate in his action." Non-Document Order (Sept. 16, 2025).

6

> The Court thus ordered Smith's Warden "to provide assistive measures necessary to ensure [that Smith] can fully participate in the upcoming status conference set for September 22, 2025." *Id*.
>
> Smith notes that the Court held a conference on September 22, 2025. Doc. 63, at 3. He says that although this hearing was conducted by video, "there was no text captioning, no TTY, and no TDD." *Id*. Smith says that "[o]nce again[,] [he] complained and was blown off again." *Id*. He adds that the Court "cut off Smith from speaking in seconds." *Id*.
>
> As before, the recording of the conference does not support Smith's assertions. At the beginning of the conference, he noted that there were no captions on his screen and stated that the sound was muffled if participants spoke too fast, but affirmed that he could hear the Court "as long as you are talking at that speed." Hearing at 10:00:38–10:00:52, Smith v. Chambers-Smith, No. 1:24-cv-0505 (Sept. 22, 2025). And when the Court and Smith had difficulty hearing Attorney Kennedy, the Court asked counsel to make his voice more audible before asking Smith whether he could hear counsel. *Id.* at 10:01:00–10:01:51. And Smith responded "that's better." *Id*. at 10:01:50.
>
> During the hearing, Smith managed to raise his concerns, often at length, and have a discussion with the Court. *See*, *e.g*, *id*. at 10:02:48–10:05:48. Indeed, his concerns led to orders designed to address them. *See* Docs. 54, 56. So the record does not support—indeed it belies—Smith's assertions that he was "blown off" of "cut off … in seconds" by the Court.
>
> Finally, Smith alleges that through the status conferences in August and September, the Court has been a party to violations of the Americans with Disabilities Act. Doc. 63, at 3, 6–8. But he has ignored both what actually happened at those conferences and the Court's efforts to ensure that he could participate in the conferences.

(*Id.* at PageID #504–07).

As demonstrated by the record (including recordings of the relevant hearings) and the above analysis, Plaintiff's accusations of disability discrimination and inability to participate in this case are unfounded. Plaintiff also states that his counsel engaged in misconduct and fraud by attempting to "rig" the case, (ECF No. 63, PageID #432), attesting that he "learned that [Magistrate Judge Grimes] and defense counsel agreed to assist Shenise to settle out the case so he could get

7

the money[,]" (ECF No. 63-1, PageID #440).  Plaintiff does not provide any evidence to support these allegations and the record is devoid of any proof of same.

Finally, Plaintiff attests that his counsel consented to the jurisdiction of the magistrate judge against Plaintiff's express instructions.  (ECF No. 63, PageID 432–33; ECF No. 63-1, PageID #439–40).  While the Court finds this to be the most compelling of Plaintiff's arguments for withdrawal of consent, the record again belies and undermines Plaintiff's contention.  Plaintiff states that he fired his attorney in June 2025, in part, for his consenting to magistrate judge jurisdiction, after he told his attorney over dozens of calls that he did not want to ever consent to a magistrate judge and Plaintiff learned through contacts that his counsel had "agreed to give my case to [Magistrate Judge Grimes]." (ECF No. 63, PageID #429; ECF No. 63-1, PageID #439–40).  Yet, in his notice/motion to withdraw counsel, stated as effective June 25, 2025, Plaintiff cites issues with his counsel failing to take certain actions related to: (i) addressing recent assaults on Plaintiff by prison staff; (ii) statutes of limitations on certain claims lapsing; (iii) filing motions for injunctive relief, (iv) amending the complaint; and (v) providing Plaintiff with copies of motions and other legal materials.  (ECF No. 41, PageID #287–88).  Two weeks later, Plaintiff filed a supplement to his notice/motion to withdraw counsel that again does not mention the issue of consent.  (ECF No. 42).  Despite Plaintiff now contending that his counsel agreeing to settle the case and consenting to proceedings before a magistrate judge was largely the basis for firing his attorney, and that he found out about these circumstances in June 2025, his motion and supplement do make any such accusation.

Moreover, the first time Plaintiff makes any mention that he did not consent to disposition of this case by magistrate judge was his Motion to Withdraw, filed more than two months after he supposedly discovered his counsel's consent to disposition by the magistrate judge.  (ECF No. 48).

8

Even then, the Motion to Withdraw does not state that counsel consented against the instructions of Plaintiff; instead, it merely states that Plaintiff never affirmatively or expressly consented to such action. (*See id.* at PageID #310). Plaintiff did not move to withdraw consent until after participating in the August 25, 2025 status conference, (ECF No. 43); Plaintiff now expresses dissatisfaction with the magistrate judge based on hearing disability issues and the conference being "one sided." (ECF No. 63. PageID #430). As discussed above, the record belies Plaintiff's assertions about the August 25, 2025 status conference. More importantly, the filing of the Motion to Withdraw after this conference indicates that the request to withdraw consent was motivated by dissatisfaction with how Magistrate Judge Grimes was running the case. It was not until Plaintiff filed his objections to the R&R that he finally put forth accusations and arguments that his counsel had consented to proceedings before the magistrate judge directly against his express wishes.

Having reviewed the Motion to Withdraw, Plaintiff's objections to the R&R, and the record, the Court finds that Plaintiff has not meet the high bar of establishing extraordinary circumstances for granting withdrawal of consent. The Court finds that the record reflects Plaintiff's request to withdraw consent is born primarily out of dissatisfaction with the magistrate judge's decisions and the manner in which hearings are conducted. Considering the relevant factors, the Court finds the Motion to Withdraw is also untimely and does not appear to be made in good faith—particularly in light of the representations and accusations made by Plaintiff that are unsupported and contradicted by the record. The Court also finds that there is no evidence of bias or prejudice on the part of Magistrate Judge Grimes. The record reflects that he has taken efforts to ensure Plaintiff could participate meaningfully in any hearings and has also addressed Plaintiff's concerns about access to legal mail. (*See, e.g.*, ECF No. 54; Order [non-document] dated Oct. 1, 2025; ECF Nos. 56, 59).

9

Having failed to demonstrate the required extraordinary circumstances, the Court cannot vacate the referral to the Magistrate Judge and Plaintiff's request to withdraw consent must be denied.  Accordingly, the Court **ADOPTS** Magistrate Judge Grimes's R&R (ECF No. 52), incorporates it fully herein by reference, and **DENIES** the Motion to Withdraw (ECF No. 48).

**IT IS SO ORDERED.**

Date: November 7, 2025

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**